IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Action No. |
| v. | ) | 05-00344-02-CR-W-ODS |
| | ) | |
| STEVEN SANDSTROM, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION TO DENY
DEFENDANT'S MOTION TO DISMISS COUNTS ONE THROUGH SIX
BASED ON MULTIPLICITY**

Before the court is defendant's motion to dismiss counts one through six on the ground that they are multiplicitous. I find that (1) counts one and three are not multiplicitous because Congress intended multiple punishments for multiple acts of interference with federally protected activities; (2) counts three and five are not multiplicitous because each requires proof of an element that the other does not; and (3) counts two, four, and six are not multiplicitous because each firearm count has a separate predicate offense. Therefore, defendant's motion to dismiss counts one through six on the ground of multiplicity should be denied.

*I.* ***BACKGROUND***

On September 29, 2005, an indictment was returned charging defendant with two counts of interference with

federally protected activities, in violation of 18 U.S.C. §
245(b)(2)(B); one count of using or discharging a firearm
during a crime of violence, in violation of 18 U.S.C. §
924(c)(1)(A)(iii); two counts of using or discharging a
firearm during a crime of violence causing murder, in
violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and (j)(1); one
count of tampering with a witness, in violation of 18 U.S.C.
§§ 1512(a)(1)(C) and (a)(3)(A); one count of obstruction of
justice, in violation of 18 U.S.C. § 1519; one count of
using fire to commit a felony, in violation of 18 U.S.C. §
844(h)(1); and one count of threatening to retaliate against
a federal witness, in violation of 18 U.S.C. § 1513(b)(2).
Defendant filed the instant motion to dismiss the indictment
on March 14, 2006 (document number 60).

On April 14, 2006, the government filed a response to
defendant's motion (document number 100). The government
argues that even though there will be substantial evidence
overlap among counts one through six, each count either
charges a separate act or requires proof of different facts.

## II. *MULTIPLICITY*

The term "multiplicity" refers to the charging of a
single offense in several counts. <u>United States v. Worthon</u>,
315 F.3d 980, 983 (8th Cir. 2003); <u>United States v. Dixon</u>,

2

921 F.2d 194, 195 (8th Cir. 1990); <u>United States v.</u>
<u>Kazenbach</u>, 824 F.2d 649, 651 (8th Cir. 1987). The vice of
this practice is that multiple sentences may result, or it
may suggest to the jury that the defendant committed more
than one crime. <u>United States v. Dixon</u>, 921 F.2d at 195.

***Counts one and three***

Count one of the indictment reads as follows:

> On or about March 9, 2005, in Kansas City,
> Jackson County, in the Western District of
> Missouri, defendants, GARY EYE and STEVEN
> SANDSTROM, while aiding and abetting one another,
> did willfully, by force and threat of force,
> attempt to injure, intimidate and interfere with
> William McCay, an African-American man, by
> shooting at him with a firearm, because of William
> McCay's race and color, and because he was and had
> been enjoying a facility provided and administered
> by a subdivision of the State of Missouri, namely,
> the public streets provided and administered by
> the City of Kansas City, in and around 9th Street
> and Spruce Avenue. The commission of this offense
> included the use of a dangerous weapon.
> All in violation of Title 18, United States
> Code, Section 245(b)(2)(B) and Section 2.

Count three of the indictment reads as follows:

> On or about March 9, 2005, in Kansas City,
> Jackson County, in the Western District of
> Missouri, defendants, GARY EYE and STEVEN
> SANDSTROM, while aiding and abetting one another,
> did willfully, by force and threat of force,
> injure, intimidate and interfere with William
> McCay, an African-American man, by shooting him
> with a firearm, because of William McCay's race
> and color, and because he was and had been

3

> enjoying a facility provided and administered by a
> subdivision of the State of Missouri, namely, the
> public streets provided and administered by the
> City of Kansas City, in and around 9th Street and
> Brighton Avenue.  The commission of this offense
> involved the use of a dangerous weapon and
> resulted in the death of William McCay.
> All in violation of Title 18, United States
> Code, Section 245(b)(2)(B) and Section 2.

When the same statutory violation is charged twice, the question is whether Congress intended the facts underlying each count to make up a separate unit of prosecution. United States v. Chipps, 410 F.3d 438, 447 (8th Cir. 2005), (citing Bell v. United States, 349 U.S. 81, 83-84 (1955)).  The unit of prosecution is the aspect of criminal activity that Congress intended to punish.

Whether counts one and three are multiplicitous depends on whether Congress intended to punish interference with federally protected activities as a course of conduct, such that the first bit of interference (the shot at 9th and Spruce) is part of the second bit of interference (the shot at 9th and Brighton which killed Mr. McCay), or whether Congress sought to punish separately individual acts within an episode.  United States v. Chipps, 410 F.3d at 448.

United States v. Page, 84 F.3d 38 (1st Cir. 1996), is instructive.  In that case, the defendants, Adams and Page, accosted three Mexicans -- Gonzales, Luna, and Valenzuela --

4

as they were about to enter a convenience store, calling

them "f---ing Mexicans" who should go back to Mexico where

they belonged, and offering to send them back in a body bag.

All of the men jumped in their cars and took off, with Adams

and Page chasing Gonzales, Luna, and Valenzuela.  At Adams's

urging, Page fired seven shots from a gun into the air,

fired twice into the car, and fired twice at the ground

behind the car.  One bullet struck Luna in the arm, and

another bullet lodged in the headrest behind Gonzales's

head.  Although the issue in that case dealt with

application of the Sentencing Guidelines, the court analyzed

§ 245(b) as follows:

> We find nothing in the statutory language to support
> reading the penalty provision of § 245(b) to permit
> enhancement only in the cases of bodily injury to the
> intended victim of the particular offense.  Nor is
> there anything indicating an intent to restrict penalty
> enhancement to a single count when multiple counts
> aimed at several individuals end up causing but a
> single bodily injury. . . .  The [district] court found
> that the offense behavior underlying both counts
> included two bullets aimed directly at the car -- that
> only Luna was physically injured is immaterial to the
> conclusion that the violations of both Luna's and
> Gonzales's civil rights each "resulted" in the bodily
> injury sustained by Luna, rendering both counts subject
> to penalty enhancement under § 245(b).

In addition, the legislative history supports the

charging of two counts as was done in this indictment.  The

Senate Judiciary Committee Report on the history of the bill

5

explained the graduated penalty provision, noting that
Congress intended to punish the offender even if the victim
was not harmed:

> If no one is actually harmed, penalties are limited to
> a $1,000 fine and 1 year imprisonment; if bodily injury
> results, the maximum penalties are a $10,000 fine and
> 10 years imprisonment; and if death results, the
> defendant is subject to imprisonment for any term of
> years or for life.

S. Rep. No. 721, 90th Cong., 2d Sess. (Nov. 2, 1967),
reprinted in 1968 U.S.C.C.A.N. 1837, 1846.  Furthermore,
Congress removed the word "serious" from the bill appearing
before "bodily injury" because "it is believed that judging
the seriousness of an injury would . . . in many instances
bear no meaningful relationship to the gravity of the
offense."  Id.

It is clear, then, that Congress viewed a threat with
no bodily injury to be an offense under § 245(b).  In
addition, the Court of Appeals in Page interpreted § 245(b)
to punish a threat that did not result in any bodily injury
in addition to one that did.  Therefore, I find that §
245(b) as charged in count one -- shooting at Mr. McCay in
the area of 9th Street and Spruce Avenue -- to be a separate
offense from § 245(b) as charged in count two -- shooting
Mr. McCay in the area of 9th Street and Brighton Avenue

resulting in his death.  These two counts, therefore, are not multiplicitous.

***Counts three and five.***

Count three of the indictment reads as follows:

> On or about March 9, 2005, in Kansas City,
> Jackson County, in the Western District of
> Missouri, defendants, GARY EYE and STEVEN
> SANDSTROM, while aiding and abetting one another,
> did willfully, by force and threat of force,
> injure, intimidate and interfere with William
> McCay, an African-American man, by shooting him
> with a firearm, because of William McCay's race
> and color, and because he was and had been
> enjoying a facility provided and administered by a
> subdivision of the State of Missouri, namely, the
> public streets provided and administered by the
> City of Kansas City, in and around 9th Street and
> Brighton Avenue.  The commission of this offense
> involved the use of a dangerous weapon and
> resulted in the death of William McCay.
> All in violation of Title 18, United States
> Code, Section 245(b)(2)(B) and Section 2.

Count five of the indictment reads as follows:

> On or about March 9, 2005, in the Western
> District of Missouri, the defendants, GARY EYE and
> STEVEN SANDSTROM, while aiding and abetting one
> another, did knowingly kill William McCay with the
> intent to prevent William McCay from communicating
> to a law enforcement officer of the United States
> information related to the commission or possible
> commission of a federal offense, that is, the
> interference with his free exercise and enjoyment
> of a right secured to him by the laws and the
> Constitution of the United States, namely, his
> right to the use and enjoyment of a public
> facility, the public streets provided and
> administered by the City of Kansas City, Missouri,
> free from intimidation based upon race and color.
> The death of William McCay involved circumstances

7

    constituting murder as defined in Title 18, United States Code, Section 1111, in that defendants GARY EYE and STEVEN SANDSTROM unlawfully killed William McCay willfully, deliberately, and with premeditation and aforethought.
    All in violation of Title 18, United States Code, Section 1512(a)(1)(C), (a)(3)(A) and Section 2.

  As discussed above, count three charges a violation of 18 U.S.C. § 245(b)(2)(B) for shooting William McCay resulting in his death because of his race and because he was enjoying the public streets. Count five charges that the same conduct also violates 18 U.S.C. §§ 1512(a)(1)(C) and (A)(3)(A), i.e., killing Mr. McCay to prevent him from reporting to law enforcement that defendants interfered with his right to enjoy the public streets.

  When the same conduct violates two different statutes, courts use the "same elements" test of <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932), which held that charged counts are not multiplicitous if each count requires proof of an element that the other count does not require. <u>United States v. Walker</u>, 380 F.3d 391, 394 (8th Cir. 2004); <u>United States v. Peterson</u>, 867 F.2d 1110, 1115 (8th Cir. 1989).

  In order to establish a violation of § 245(b), the government must prove that defendant (1) used force or a threat of force to willfully injure, intimidate, or

8

interfere with, or attempt to injure, intimidate, or interfere with William McCay (3) because of his race, and (4) because McCay was enjoying the public streets of Kansas City, Missouri. <u>See</u> 18 U.S.C. § 245(b)(2)(B); <u>United States v. Nelson</u>, 277 F.3d 164, 185-186 (2nd Cir.), <u>cert</u>. <u>denied</u>, 173 U.S. 835 (2002); <u>United States v. Lane</u>, 883 F.2d 1484, 1495 (10th Cir. 1989), <u>cert</u>. <u>denied</u>, 493 U.S. 1059 (1990).

In order to establish a violation of § 1512(a)(1)(C), the government must prove that defendant (1) knowingly killed William McCay, and (2) defendant did so with intent to prevent communication with federal law enforcement officials regarding a federal offense. <u>See</u> Eighth Circuit Model Criminal Jury Instruction 6.18.1512.

Using the <u>Blockburger</u> analysis, it is clear that counts three and five are not multiplicitous. Count three requires the government to prove race as a motivating factor and McCay's use of the public streets as a motivating factor. Count five does not require proof of those elements. Count five requires proof that defendant intended to prevent communication about a federal crime to law enforcement, but count three does not require proof of such an intent. Therefore, because each count requires proof of an element

9

that the other does not, counts three and five are not multiplicitous.

***Counts two, four, and six.***

Count two of the indictment reads as follows:

> On or about March 9, 2005, in Kansas City, Jackson County, in the Western District of Missouri, defendants, GARY EYE and STEVEN SANDSTROM, while aiding and abetting one another, knowingly used, carried, and discharged; and caused to be used, carried, and discharged, a firearm, namely a .22 caliber revolver, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, the offense charged in Count One of the Indictment and incorporated herein by reference.
> All in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii) and Section 2.

Count four of the indictment reads as follows:

> On or about March 9, 2005, in Kansas City, Jackson County, in the Western District of Missouri, defendants, GARY EYE and STEVEN SANDSTROM, while aiding and abetting one another, knowingly used, carried, and discharged; and caused to be used, carried, and discharged, a firearm, namely a .22 caliber revolver, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, the offense charged in Count Three of the Indictment and incorporated herein by reference. In committing this offense, defendants, GARY EYE and STEVEN SANDSTROM, caused the death of William McCay through the use and discharge of said firearm. The death of William McCay involved circumstances constituting murder as defined in Title 18, United States Code, Section 1111, in that defendants GARY EYE and STEVEN SANDSTROM unlawfully killed William McCay willfully, deliberately, and with premeditation and malice aforethought.

10

All in violation of Title 18, United States
Code, Section 924(c)(1)(A)(iii), (j)(1), and
Section 2.

Count six of the indictment reads as follows:

On or about March 9, 2005, in Kansas City,
Jackson County, in the Western District of
Missouri, defendants, GARY EYE and STEVEN
SANDSTROM, while aiding and abetting one another,
knowingly used, carried, and discharged; and
caused to be used, carried, and discharged, a
firearm, namely a .22 caliber revolver, during and
in relation to a crime of violence for which they
may be prosecuted in a court of the United States,
that is, the offense charged in Count Five of the
Indictment and incorporated herein by reference.
In committing this offense, defendants, GARY EYE
and STEVEN SANDSTROM, caused the death of William
McCay through the use and discharge of said
firearm.  The death of William McCay involved
circumstances constituting murder as defined in
Title 18, United States Code, Section 1111, in
that defendants GARY EYE and STEVEN SANDSTROM
unlawfully killed William McCay willfully,
deliberately, and with premeditation and malice
aforethought.
All in violation of Title 18, United States
Code, Section 924(c)(1)(A)(iii), (j)(1), and
Section 2.

When the same statutory violation is charged more than

once, the question is whether Congress intended the facts

underlying each count to make up a separate unit of

prosecution. United States v. Chipps, 410 F.3d at 447,

(citing Bell v. United States, 349 U.S. at 83-84).  The unit

of prosecution is the aspect of criminal activity that

Congress intended to punish.

11

Whether counts two, four, and six are multiplicitous depends on whether Congress intended to punish carrying or using a firearm in relation to multiple violent crimes as a single course of conduct, or whether Congress sought to punish separately individual acts of carrying or using a firearm within an episode.  United States v. Chipps, 410 F.3d at 448.

Because of the Double Jeopardy Clause's prohibition on multiple punishments, a court may not impose more than one sentence upon a defendant for violations of section 924(c) which involve one gun and relate to but one predicate offense. United States v. Allee, 299 F.3d 996, 1003 (8th Cir. 2002).  Courts have upheld multiple convictions and sentences under 18 U.S.C. § 924(c)(1) "so long as such convictions are based on separate predicate acts."  Id. (separate 924(c) convictions for carrying a firearm during a robbery and carjacking); United States v. Davis, 103 F.3d 660 (8th Cir. 1996) (three bank robberies, two of them five minutes apart, resulted in three 924(c) convictions); United States v. Burnette, 170 F.3d 567, 572 (6th Cir.), cert. denied, 528 U.S. 908 (1999) ("It is now firmly established that the imposition of separate consecutive sentences for multiple § 924(c) violations occurring during

12

the same criminal episode are lawful."); <u>United States v. Parker</u>, 23 F.3d 409 (6th Cir. 1994) (multiple counts of 924(c) not multiplicitous when predicate offenses were drug conspiracy (21 U.S.C. § 846) and possession with intent to distribute cocaine (21 U.S.C. § 841)).

What constitutes a separate use of a firearm in relation to a crime of violence is a question of fact. <u>United States v. Canterbury</u>, 2 F.3d 305, 306 (8th Cir. 1993). The government has the burden of proving separate, prohibited uses of a firearm to support each charge of violating § 924(c). <u>Id</u>.

As discussed above, counts one, three, and five are not multiplicitous and are all separate prosecutable predicate offenses. Therefore, the three 924(c) charges for carrying or using a firearm in relation to each of those three crimes of violence are not multiplicitous.

**III. CONCLUSION**

Because (1) Congress intended multiple punishments for multiple instances of interference with federally protected activity, (2) counts three and five each require proof of an element that the other does not, and (3) multiple charges of using or carrying a firearm during a crime of violence are

13

permissible when there are multiple predicate offenses, it
is

RECOMMENDED that the court, after making an independent
review of the record and the applicable law, enter an order
denying defendant's motion to dismiss counts one through six
of the indictment on the ground of multiplicity.

Counsel are advised that, pursuant to 28 U.S.C. §
636(b)(1), each has ten days from the date of receipt of a
copy of this report and recommendation to file and serve
specific objections.


_____/s/ Robert E. Larsen_____
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
May 11, 2006

Case 4:05-cr-00344-ODS   Document 120   Filed 05/11/06   Page 14 of 14