IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-00344-01/02-CR-W-ODS |
| ) | |
| GARY EYE and ) | |
| STEVEN SANDSTROM, ) | |
| ) | |
| Defendants. ) | |

ORDER OVERRULING DEFENDANTS' OBJECTIONS, ADOPTING THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND DENYING
DEFENDANTS' MOTION TO SUPPRESS

On September 5, 2006, the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri, issued a Report and Recommendation ("the Report") recommending the Court deny Defendants' Motion to Suppress. Defendants have filed timely objections, and the Court has reviewed the Report and the parties' submissions on the matter; having done so, the Court adopts the Report as the Order of the Court and denies Defendants' Motions to Dismiss.

Nearly all of the facts are undisputed, and the Court adopts the Report's findings even though only a summary will be provided here. For a period of time, both Defendants were detained at the Jackson County Detention Center (the "detention center") pending trial in this case. The detention center contains fifty-two housing units, each containing at least two telephones in that unit's common area. Inmates and detainees may use these phones to contact family, friends, and attorneys. To combat abuse, in 1996 the phones were modified to permit monitoring and recording of calls. A laminated piece of paper on the phones contains operating instructions, which includes the following admonition: "Calls are subject to monitoring and recording." When the phone is used, the instructions (including the quoted admonition) are repeated via

recording before the call is placed, and again when the person receiving the call answers the phone.[1]

All calls (with certain exceptions not relevant here)[2] are recorded. Calls are not routinely monitored; they are usually monitored only by Sprint (to insure the system is operating properly) and when detention center officials receive reports that an inmate is making harassing phone calls.

Some of the conversations reflect each Defendant's awareness their calls were being monitored. For instance, these are excerpts of conversations between Gary Eye and Regennia Rios:

RR: What you think you're gonna do? Six months set back?

GE: I don't know. I hope not. I'm gonna try to [unintelligible] so I can run.

RR: Hmm. You're silly, why would you say that on the phone [uintelligible]?

GE: Fuck the man.

\* \* \*

GE: Guess whose picture they showed me? You know that old boy we picked up that one night? From [unintelligible]? WE all went all the way out to that store and in the restroom and shit?

RR: Yeah.

GE: Don't say his name. But yeah.

During a conversation between Steven Sanstrom and Kristina Chirino, Sandstrom warned her to "say nothing on this phone because they are listening to it."[3]

---

[1] Due to a malfunction, the oral instructions were not played before some of the calls placed by Defendants. This fact does not affect the Court's findings or legal analysis.

[2] For instance, calls to the Public Defender's Office are not recorded or monitored.

[3] Evidence of a conversation between the two Defendants was also offered, along with the testimony of an FBI Special Agent opining (1) the Defendants were speaking in

2

Federal law prohibits the recording of telephone conversations unless a warrant has been issued or other specified exception are present, and no conversation recorded in violation of the statute may be used as evidence in court. One of the specified exceptions allows law enforcement officials to record a conversation if "one of the parties to the communication has given prior consent to such" recording. 18 U.S.C. § 2511(2)(c). While the statute applies to the monitoring of prisoner and detainee phone calls, United States v. Horr, 963 F.2d 1124 (8th Cir.), cert. denied, 506 U.S. 848 (1992), "[i]t is generally accepted that a prisoner who places a call from an institutional phone with the knowledge that the call is subject to being recorded has impliedly consented to the recording." United States v. Faulkner, 439 F.3d 1221, 1224 (10th Cir. 2006) (citing cases). This is because "[w]hen someone voluntarily participates in a telephone conversation knowing that the call is being intercepted, this conduct supports a finding of implied consent to the interception." United States v. Corona-Chavez, 328 F.3d 974, 978 (8th Cir. 2003). In light of the written warnings, the oral warnings, and Defendants' conduct, the Court finds both Defendants impliedly consented to the recording of their telephone calls.

Defendants' primary argument is that they only knew their calls were *subject to* monitoring and recording, not that they were *actually* monitored and recorded. For support, they rely on Deal v. Spears, 980 F.2d 1153 (8th Cir. 1992). In Deal, an employer told his employee that "he might be forced to monitor calls or restrict telephone privileges if abuse of the store's telephone for personal calls continued." Id. at 1156-57. In context, this declaration conveyed the message that (1) calls were not being monitored and (2) if circumstances did not change the monitoring might be instituted. In contrast to these representations, the employer immediately began monitoring and recording conversations. In rejecting the employer's claim that the employee consented to the recordings, the Eighth Circuit held the record reflected "[t]he

---

code (2) because they knew they were being recorded. Defendants object to this fact. Actually, the Report only finds this to be the Special Agent's belief, and the Court believes there is other sufficient evidence to support the ultimate conclusion reached today.

3

Spearses did not inform Deal that they were monitoring the phone, but only told her they might do so in order to cut down on personal calls." Id. at 1157.

Defendant's effort to equate the detention center's warning that calls are "subject to monitoring" with the statement "we might start monitoring" is not persuasive. "Subject to" does not mean "might;" in context, the detention center's warnings advised detainees and inmates they should use the phones with the expectation that the call would be recorded and monitored. This warning was sufficient to advise Defendants their calls would be heard by third parties; Defendants' consent did not require the detention center to inform Defendants there was a certainty their calls would be monitored and recorded.

The evidence in the record persuades the Court that, as a matter of fact, (1) Defendants were advised their telephone calls would be recorded and monitored, (2) Defendants knew their telephone calls would be recorded and monitored, and (3) Defendants' consented to the recording and monitoring by using the telephones while armed with this knowledge. The statute was not violated; Defendants' objections are overruled, the Report and Recommendation is accepted as the Order of the Court, and the Motion to Suppress is denied.

IT IS SO ORDERED.

DATE: October 4, 2006

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT