IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA,     )
                             )
           Plaintiff,     )
                             )
v.                          )     Case No. 05-00344-02-CR-W-ODS
                             )
STEVEN SANDSTROM,     )
                             )
           Defendant.     )

## ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND DENYING DEFENDANT'S MOTION TO SUPPRESS

On September 8, 2006, the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri, issued a Report and Recommendation ("the Report") recommending the Court deny Defendant's Motion to Suppress. Defendant has filed timely objections, and the Court has reviewed the Report and the parties' submissions on the matter; having done so, the Court adopts the Report as the Order of the Court and denies Defendants' Motions to Dismiss.

The Report's factual findings are both detailed and well-supported; the Court adopts the factual findings in their entirety. In the interest of brevity, not all of these findings will be repeated: a summary will suffice. Defendant was admitted to the Jackson County Detention Center at 1:10 a.m. on March 18, 2005, having been arrested on outstanding warrants unrelated to the crimes at issue in this case. In response to questions posed during the admitting process, Defendant admitted he had used methamphetamine during the last twenty-four hours. Defendant was released later that evening, but before he left the Detention Center he was met by Detectives Matthew Williams and Robert Blehm of the Kansas City Missouri Police Department. The detectives asked Defendant if he would agree to be questioned, and he assented. Defendant was then taken to the police station; he was not handcuffed or shackled and would have been released if he had declined the detectives' request or otherwise indicated he wanted to leave.

At the beginning of the interview, Defendant was advised he was a suspect in the murder underlying the charges in this case. Defendant was cooperative during the interview and nothing in his appearance or demeanor suggested he was under the influence of drugs. Prior to questioning Defendant was provided a *Miranda* waiver; he read the form and signed it. As Defendant explained during the suppression hearing, "I signed the *Miranda* rights. I was willing to talk to them. I mean I ain't got a problem talking to anybody." Tr. at 94. The questioning began at 6:20 p.m. and concluded at 11:59 p.m., during that time, Defendant was not placed in handcuffs or other restraints and did not seek to leave, terminate the interview, or request counsel. At Defendant's request, he was taken near to his parents' house – he did not want to be taken to the house because he did not want his parents to see the police vehicle.

At 8:50 a.m. on April 11, 2005, Defendant was arrested and, at 11:32 a.m., was admitted to the city jail. He was asked several routine questions during the booking process, and among his responses he reported having used "crack/meth" in the previous twenty-four hours but denied being intoxicated or under the influence of drugs or alcohol. At 4:32 p.m., Defendant was interviewed by Detective Blehm and Special Agent Arch Gothard of the FBI. Defendant was presented with a *Miranda* form and, after reading it and confirming his understanding of its contents, signed it. Defendant did not appear to be under the influence of drugs or alcohol. Despite understanding he did not need to talk, Defendant answered questions about inconsistencies in his prior statements and, in so doing, offered additional inconsistencies that led to further questioning. The interview ended at 7:10 p.m.; Defendant did not indicate a desire to stop talking or be advised by counsel. Defendant was returned to the detention unit upon completion of the interview. The Court specifically finds no promises were made to Defendant about what, if any, charges would be filed against him.

Defendant's testimony at the suppression hearing is not credible for the reasons cited in the Report. Generally, Defendant's testimony was contradictory. For instances, at various times he testified he did not understand what was happening because of the effect of methamphetamine, but at other times testified that he did understand what was going on. For instance, he confirmed that he signed the *Miranda* warning because he

2

was willing to talk to the investigators, but then declared he did not understand his rights or the sequence of events in which he was involved. In addition, as the Government pointed out in its opposition to Defendant's motion, Defendant has posited that (1) he was persuaded to provide statements based on promises made during the interview, yet (2) he was so affected by the drugs that he did not know what was happening. These are just two examples: in many other respects, Defendant's testimony was contradictory or otherwise changing over time in an attempt to present what he believed would be the best story for his purposes.

Based on these findings, the Report's legal conclusions are adopted as well. In particular, the Court concludes Defendant's statements were made voluntarily and without coercion. Defendant was not subjected to threats or intimidation, no promises were made, and he understood and was aware of his rights. He had used narcotics, but he was not affected to such a degree that his ability to understand and waive his rights and consent to talk was nullified. E.g., United States v. Contreras, 372 F.3d 974 (8th Cir. 2004), cert. denied, 126 S. Ct. 246 (2005); see also Townsend v. Sain, 372 U.S. 293, 307 (1963). Defendant voluntarily agreed to accompany the officers to the March 18 interview, and he was not handcuffed or in custody. On both occasions he voluntarily waived his rights to remain silent and to obtain the assistance of counsel and agreed to talk to the officers.

The Report and Recommendation is adopted as the Order of the Court, and the Motion to Suppress is denied.

IT IS SO ORDERED.


/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: October 18, 2006              UNITED STATES DISTRICT COURT

3