IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05-00344-01/02-CR-W-ODS |
| ) | |
| GARY EYE and ) | |
| STEVEN SANDSTROM, ) | |
| ) | |
| Defendants. ) | |

**ORDER AND OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS REGARDING THE DEATH PENALTY**

Pending are several motions filed by Defendants attacking various aspects of the Government's attempt to seek the death penalty. The Court's rulings and reasoning follow.

I.

Defendant Eye's Motion to Declare the Federal Death Penalty Act Unconstitutional (Doc. # 264) is denied. The Federal Death Penalty Act ("FDPA") contemplates that facts relating to eligibility for the death penalty (such as aggravating factors and mental state) be set forth in a notice expressing the Government's intent to seek the death penalty. The FDPA does not specifically require such facts be alleged in the Indictment as would seemingly be required by recent Supreme Court decisions. In this case, the Government included such facts in the Indictment in order to comply with those decisions. Defendant argues that inclusion of such facts in the Indictment is contrary to the FDPA, because it contemplates such facts be alleged in a mere notice and not formally included in the Indictment.

Defendant's argument has been rejected by the Court of Appeals. "While it is true that the FDPA directs the government to charge these factors in a notice of intent to

seek the death penalty, nothing in the Act precludes the government from also submitting them to the grand jury for inclusion in the indictment." United States v. Allen, 406 F.3d 940, 949 (8th Cir. 2005) (en banc), cert. denied, 127 S. Ct. 826 (2006).

II.

The Motion to Strike the Sole Statutory Aggravating Factor (Doc. # 298) is denied.[1] The Government is obligated to designate one or more statutorily-listed aggravated factors when seeking the death penalty. In this case, the Government designated the factor identified in 18 U.S.C. § 3592(c)(9): "[t]he defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism." Defendants contend this aggravator is too vague and broad to withstand constitutional scrutiny.

"In order for a capital sentencing scheme to pass constitutional muster, it must perform a narrowing function with respect to the class of persons eligible for the death penalty and must also ensure that capital sentencing decisions rest upon an individualized inquiry." Jones v. United States, 527 U.S. 373, 381 (1999). "[T]he aggravating circumstance must meet two requirements. First, the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. Second, the aggravating circumstance may not be unconstitutionally vague." Tuilaepa v. California, 512 U.S. 967, 972 (1994) (citations omitted). The review for vagueness is "quite deferential" because eligibility factors are not easily reduced to mathematical or objective criteria. Id. at 973. "As long as an aggravating factor has a core meaning that criminal juries should be capable of understanding, it will pass constitutional muster." Jones, 527 U.S. at 400. Under this deferential standard, few aggravating circumstances have been found wanting. Id. at 401 n.15. Indeed, every court to consider the issue has sustained the constitutionality

---

[1] The motion was filed by Defendant Eye. Defendant Sandstrom's request to join in the motion (Doc. # 300) is granted.

of section 3592(c)(9). E.g., United States v. Mitchell, 502 F.3d 931, 978 (9th Cir. 2007), petition for cert. filed, Feb. 11, 2008 (No. 07-9351); United States v. Bourgeois, 423 F.3d 501, 511 (5th Cir. 2005), cert. denied, 547 U.S. 1132 (2006); United States v. Jackson, 327 F.3d 273, 301 (4th Cir.), cert. denied, 540 U.S. 1019 (2003).[2]

Not all murders involve planning and premeditation, and fewer still involve "substantial" planning and premeditation. Comparing the language in section 3592(c)(9) to the language found acceptable in the cases collected in Tuilaepa demonstrates complete objectivity of terms is not required, and the language in the FDPA is not impermissibly vague.

### III.

In separate motions, both Defendants have asked the Court to strike the Government's Notice of Intent to Seek the Death Penalty. The motions (Doc. # 299 and Doc. # 301) are granted in part.

*A. The Non-Statutory Aggravating Factors*

As previously mentioned, the Government is required to file a notice of its intent to seek the death penalty that, *inter alia*, "set[s] forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death. 18 U.S.C. § 3593(a)(2). By way of context, the Supreme Court has recognized two aspects of the capital sentencing process. "In the eligibility phase, the jury narrows the class of defendants eligible for the death penalty, often through consideration of aggravating circumstances. In the selection phase, the jury determines whether to impose a death sentence on an eligible defendant." Buchanan v. Angelone, 522 U.S. 269, 275 (1998). In order to find a guilty defendant "death eligible," the jury

---

[2]In addition, the Tenth Circuit has upheld an identical provision appearing in the federal death penalty statutes for drug traffickers, 21 U.S.C. § 848(n)(8). See United States v. McCullah, 76 F.3d 1087, 1110 (10th Cir.), cert. denied, 87 F.3d 1136 (1996).

3

must find one or more statutorily established aggravators exist; as discussed earlier, in this case the Government has relied on the aggravator in 18 U.S.C. § 3592(c)(9). When determining whether a "death eligible" defendant should be sentenced to death, the jury may consider nonstatutory aggravating factors so long as those factors are identified in the notice. See Jones, 527 U.S. at 377-78 & n.2.

The nonstatutory aggravating factors asserted by the Government are identical for each Defendant, and in summary are as follows:

1. Threat of future dangerousness to others as indicated by the lack of remorse.
2. The impact of the crime on the victim and the victim's family and friends.
3. The victim was chosen based on his "race, color, national origin or ethnicity."
4. The defendant obstructed and impeded justice during the investigation.

Defendants assert several objections to these factors, most of which stem from the Notice's failure to provide factual details or evidence to support the allegation. The expedient answer to Defendants' objection about insufficient notice is found in *United States v. Lee*, where the Eighth Circuit held the defendant "had no right to advance notice of the specific evidence the government would use to prove those factors." 274 F.3d 485, 495 (8th Cir. 2001), cert. denied, 537 U.S. 1000 (2002). Moreover, the Notice should not be viewed in isolation; in *Lee* the Court of Appeals observed the jury instructions approved by the defendant "provided advance notice of the evidence which the government later introduced . . . ." Id. at 495 n.4. In this case, Defendants have been provided with significant amounts of information, and additional information about the Government's theories and allegations can be found in the Superseding Indictment.

The absence of an obligation for the Government to disclose evidence hampers Defendants' arguments regarding the *sufficiency* of evidence to support any of these factors. The Court cannot assess the sufficiency of evidence on any of the nonstatutory aggravating factors until the evidence is presented at trial. If the evidence is insufficient

as to any of them, the Court can simply decline to include those factors in the jury instructions.[3]  For now, the Court merely holds the Government's allegations are legally sufficient to provide Defendants with the notice to which they are entitled.[4]

Defendants also challenge specific individual aggravators.  With respect to future dangerous, both Defendants argue the factor must focus on future dangerousness *in prison*.  There is certainly a logical basis for this position: if the jury reaches this point in its considerations, the only possible sentences would be death or life imprisonment so there would seem to be no basis for considering the threat of harm to the public at large.  See, e.g., United States v. Peoples, 74 F. Supp. 2d 930, 931 (W.D. Mo. 1999) ("'future dangerousness' is to be confined to analysis of past activities and propensities for danger to inmates and prison staff . . . .").  However, this does not necessarily mean that any particular item of evidence is inadmissible.  To the contrary, lack of remorse has been acknowledged as a possible indicator of future dangerousness.  See United States v. Ortiz, 315 F.3d 873, 901-02 (8th Cir. 2002).  As Judge Sachs did in *Peoples*, the undersigned holds the issue of future dangerousness must focus on potential risk to inmates and prison staff.  Whether the Government's evidence will ultimately be sufficient cannot (and need not) be determined at this juncture.

Defendants next contend the allegation they chose their victim based on his race cannot be a nonstatutory aggravator because it is an element of the crime with which they are charged.  "[A] capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'"  Lowenfield v. Phelps, 484 U.S. 231, 244 (1988) (quoting Zant v. Stephens, 462 U.S. 862, 877 (1983)).  Lowenfield explained this "narrowing function" could be performed in

---

[3]This rationale also addresses Defendants' concerns that their failure to admit to the crimes or help the Government in its investigation or prosecution be deemed a lack of remorse.  Obviously, such conduct cannot justify imposition of the death penalty– a point conceded by the Government.

[4]This ruling also applies to Defendants' arguments alleging other aspects of the Notice are vague.

one of two ways: "[t]he legislature may itself narrow the definition of capital offenses . . . so that the jury finding of guilt responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances as the penalty phase." Id. at 246. When the definition of the crime narrows the universe of murders for which the death penalty is available, "[t]he fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition is no part of the constitutionally required narrowing process, and so the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm." Id.

The Government relies on Lowenfield for the broad proposition that an element of the crime is a valid aggravating factor, but this overstates Lowenfield's holding. As explained in the preceding excerpt, this is true only if the "narrowing function" has already been performed in the definition of the crime itself: Lowenfield does not say elements of the crime can be aggravating factors if the only narrowing is performed through the use of those aggravating factors. Indeed, the Supreme Court has acknowledged this as the scope of its ruling. "In [Lowenfield] we held that an aggravating circumstance may duplicate an element of the capital offense if the class of death eligible defendants is sufficiently narrowed by the definition of the offense itself." Williams v. Taylor, 529 U.S. 362, 392 n.16 (2000); see also Cooey v. Coyle, 289 F.3d 882, 927 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

Defendants are not charged with crimes that perform the "narrowing function." The Government's Notice indicates this proposed nonstatutory aggravator applies to Counts I and III, both of which charge violations of 18 U.S.C. § 245(b)(2)(B). This crime applies to anyone who, "by force or threat of force, willfully injures intimidates or interferes with . . . any person because of his race, color, religion, or national origin because he is or has been . . . enjoying any benefit, service, privilege, program facility or activity" administered by any State. Thus, Defendants' motivation is an element of the crime, and it must be proved that Defendants chose their victim because of his race. However, this element does not "narrow[ ] the categories of murders for which a death sentence may ever be imposed" like the schemes described in Lowenfield. 484 U.S. at

6

245.[5]  This element differentiates the crime from others, but not on a basis Congress specified as distinguishing between capital and non-capital crimes.  In fact, § 245(b)(2)(B) does not even define a capital offense, so the crime's definition cannot be understood as narrowing the universe of murders to those that justify imposition of the death sentence.  For these reasons, the jury cannot be asked to consider elements of the offense as nonstatutory aggravating factors, and at present the Court is not inclined to submit this factor to the jury.

Finally, Defendants contend the Government's last nonstatutory aggravator – that the defendants obstructed and impeded the investigation – duplicates other crimes charged in the Superseding Indictment.  Even if this is true, and the Government's sole support for this factor involves evidence of Counts VII - IX, Defendants have not explained why this would be improper.  Assuming Defendants are convicted on those counts – a fact the jury would be well-aware of, having made the decision – the Court is not aware of any reason why the jury cannot be asked to consider those actions when determining the appropriate punishment.

### B.  The Statutory Aggravator

Defendant Sandstrom discerns a contradiction between (1) the mental states and (2) the statutory aggravator identified in the Government's notice.  As noted earlier, the statutory aggravator relied upon alleges Sandstrom "committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism."   The mental states identified in the Notice are based on sections

---

[5]Lowenfield involved Louisiana's capital sentencing scheme, which defined separate degrees of murder.  Anyone committing first degree was eligible for the death penalty, so the elements defining first degree murder "narrowed" the universe of murderers who might face the death penalty.  Further narrowing was required by the need to find at least one statutorily-defined aggravator.  484 U.S. at 242-43.  The statutory aggravator submitted mirrored the element that differentiated between first and second degree murder. Id. at 243-44.  While the sole aggravator was an element of the crime, the Court held there was no constitutional infirmity because the definition of the crime had already performed the required "narrowing function."

7

3591(a)(2)(C) and 3591(a)(2)(D), which require the jury to find the defendant "intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person" or that he "intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person . . . ."

Sandstrom argues – and the Government does not deny -- that the aggravator requires "substantial planning and premeditation" for the murder, not just the underlying offense. See United States v. Webster, 162 F.3d 308, 325 (5th Cir. 1998), cert. denied, 528 U.S. 829 (1999). However, this is not inconsistent with a finding of either mental state specified in the Notice. A jury could conclude Sandstom engaged in substantial planning and premeditation and that he also "intentionally participated in an act, contemplating that the life of a person would be taken." A jury could also make the necessary finding about planning and premeditation and also find Sandstrom "intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death."

IV.

Defendant Eye argues application of the death penalty is unconstitutional as applied to him. Although Eye was over the age of eighteen when the crime allegedly occurred, he contends that developmentally his brain was the same as someone under the age of eighteen. Accepting these factual characterizations as correct for the sake of discussion, the Court concludes the Constitution does not forbid application of the FDPA.

Eye relies upon *Roper v. Simmons*, where the Supreme Court noted the distinctions between "juveniles" and "adults," 543 U.S. 551, 573 (2005) and concluded the Eighth Amendment forbids executing anyone for their conduct prior to the age of eighteen. In making the distinction between those younger than and older than eighteen, the Court simultaneously recognized and rejected the possibility of the same argument Eye now presents:

8

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

543 U.S. at 574. The Court concludes Roper forecloses Eye's argument that his "developmental age," and not his chronological age, should be considered.[6]

IT IS SO ORDERED.

DATE: March 17, 2008

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

---

[6]This does not preclude a defendant from arguing that he should not be eligible for the death penalty because he is mentally retarded, but the Court does not understand this to be Eye's argument.